# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIVIANA CANTRES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW M. SAUL, ) <br> Commissioner of Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | Case No. CIV-19-608-SM |

## MEMORANDUM OPINION AND ORDER

Viviana Cantres (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Docs. 9, 11.

Plaintiff maintains the ALJ erred in his consideration of medical evidence related to Plaintiff's bilateral upper extremity impairments. She also argues there is not substantial evidence to support the ALJ's residual functional capacity (RFC)[1] assessment, and that, in the alternative, the ALJ should have developed the record regarding her bilateral upper extremity impairments. Doc. 14, at 6-22. After a careful review of the record (AR), the

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

parties' briefs, and the relevant authority, the court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

---

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 24-32; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since December 22, 2016, the alleged onset date;

(2) had the severe impairments of bilateral carpal tunnel syndrome and rheumatoid arthritis;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the RFC to perform the full range of light exertion work;

(5) for purposes of his decision was illiterate;

(6) could perform jobs that exist in significant numbers in the national economy; and thus

(7) was not disabled from December 22, 2016 through December 6, 2018.

AR 18-28.

### 2. Appeals Council's findings.

The SSA's Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. *Id.* at 1-8; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation marks and citation omitted).

**B. Issues for judicial review.**

**1. The ALJ adequately considered the medical evidence.**

Plaintiff contends the ALJ "completely ignored" large amounts of probative evidence "showing abnormalities and work-related functional limitations in her hands and elbows." Doc. 14, at 13. Plaintiff notes:

> The ALJ found [her] bilateral carpal tunnel syndrome and rheumatoid arthritis were severe at step two. He acknowledged [her] statements that she had difficulty using her hands; that she used a brace or splint for her carpal tunnel syndrome on a daily basis; that she had swelling in her hands; and that her hand impairments interfered with her ability to care for herself, perform her part-time job as a florist, and perform household chores such as cooking. The ALJ mentioned the fact that [Plaintiff] underwent carpal tunnel release procedures on both of her hands and stated she showed good healing and "acceptable range of motion" following these surgeries. He discussed her bilateral hand x-rays, indicating these x-rays "were consistent with only a suggestion of mild arthritic changes from the third and fourth finger in both hands . . ." The ALJ also noted that [Plaintiff's] bilateral wrist x-rays were negative for abnormalities and her left elbow MRI was "largely unremarkable." He stated her wrists and elbows did not show any positive Tinel's signs and her sensation to pinprick was symmetrical in all her extremities. The ALJ specifically explained that additional manipulative limitations did not need to be included in [her RFC] to address her carpal tunnel syndrome because she showed a "good response to surgery" or to address her arthritis because she "consistently reported improvement" with conservative treatment and showed "minimal findings on objective studies and examination." He also reported she engaged in a number o[f] daily activities such as driving and making simple meals.

*Id.* at 12-13 (record citations omitted).

As part of the allegedly overlooked medical evidence, Plaintiff largely cites physical therapy reports from 2017. *Id.* at 13-15. No physical therapist offered an opinion, and physical therapists are not acceptable medical sources. *Kellams v. Berryhill*, 696 F. App'x 909, 918 (10th Cir. 2017) (quoting 20 C.F.R. §§ 404.1502(a), 416.902(a)). "Evidence from other sources like chiropractors and physical therapists, however, may be used 'to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.'" *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2263437, at *2 (Aug. 9, 2006)).

Plaintiff correctly notes that after one round of physical therapy, she still reported pain, and that "her forearm and wrist range of motion was decreased from goal." Doc. 14, at 14 (citing AR at 606-07) (July 5, 2017). Similarly, while in 2017 she could not push/pull or hold a steady grip with her left hand, AR at 606-07, by August 2017, she improved in both areas. *Id.* at 631-32 (noting "improved ability with gripping and motor control activities" and "improving ability to generate appropriate forces to allow use of(L) UE to perform push/pull ADL task"). And the ALJ noted her improved condition, relying on objective medical evidence including MRI results and x-rays from late 2017. *Id.* at 25 (noting November 2017 x-rays of wrists "were negative, noting no acute processes").

Similarly, while Plaintiff accurately describes Jimmy Stanton's January 2018 physical therapy evaluation, Doc. 14, at 15, the ALJ pointed to Dr. Cibes-Silva's February 2018 examination which also noted Plaintiff's elbow MRI showed no acute internal derangement, or effusion and no advanced arthrosis or tendon rupture. AR 25, 724.

Each cited record shows there existed no barriers to rehabilitation, and that "Rehabilitation Potential" was "Good." *Id.* at 577, 579, 585, 589, 593, 599, 601, 603. Others stated that the Rehabilitation Potential was "Excellent." *See, e.g., id.* at 533, 537, 539, 543, 618, 620, 622.

Plaintiff fails to describe how her physical therapy treatment records, even assuming they are contradictory to the ALJ's RFC, constitute error based on an improper weighing of medical evidence. "Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose." SSR 06-03p, 2006 WL 2329939, at *2. Here, no physical therapist provided an opinion about the severity of Plaintiff's impairments. Similarly, not one of them prepared a functional assessment regarding the impact of Plaintiff's impairments on her ability to do work related activities. Their records do not conflict with the ALJ's RFC, thus weakening the need for express analysis. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (explaining that "[w]hen the ALJ does not need to

7

reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened").

To the extent Plaintiff relies on reports from Drs. Dianne Cooper and Jose Collado, Doc. 14, at 13-14, none of these reports conflict with the ALJ's RFC assessment, which limited Plaintiff to light work. The ALJ relied on the objective medical evidence and the state agency physicians' opinions (which also considered Plaintiff's physical therapy records and the medical evidence of record) when assessing Plaintiff's RFC. The RFC assessment restricted Plaintiff to lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds—an amount of weight the regulations note "may be very little." 20 C.F.R. § 404.1567(b). The ALJ did not commit legal error when assessing the medical evidence.

**2. Substantial evidence supports the ALJ's RFC assessment.**

Next, Plaintiff argues that substantial evidence does not support the ALJ's RFC assessment. Doc. 14, at 17. Here, the ALJ gave "great weight" to Drs. Yoakam's and Boatman's opinions that Plaintiff can perform the full range of light work. AR 26.

Plaintiff also alleges that the ALJ improperly relied on the opinions from the reviewing state agency physicians, at least in part because they issued these opinions in August 2017 and September 2017, so the physicians could

8

not review Plaintiff's later medical records. Doc. 14, at 21-22. An ALJ may give weight to the opinion of a state agency medical consultant when that opinion is consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole); *see also Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an "acceptable medical source," whose opinion the ALJ is "entitled to consider"). Plaintiff did not undergo any material change in her condition. *See Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015) ("[N]othing in the later medical records [plaintiff] cites supports . . . a material change in [plaintiff's] condition that would render [the agency physician's] opinion stale."). Both state agency physicians acknowledged Plaintiff's distress with chronic pain, her carpal tunnel, and that her left wrist "looks worse with more pain," and acknowledged her left elbow stiffness. AR 105, 119. And though the state agency physicians did not consider Dr. Cibes-Silva's treatment records, Doc. 14, at 22, the ALJ did. AR 25.

Here, the ALJ evaluated the state agency physicians' opinions that Plaintiff retained physical abilities consistent with the full range of light work. *Id.* at 26. The ALJ then reasonably concluded that these opinions were entitled to "great weight" because they were "well-supported by the evidence." *Id.* The Court will not reweigh the evidence or overturn the ALJ's reasonable conclusions on appeal. *Newbold*, 718 F.3d at 1262.

The ALJ considered the "entire record," including a longitudinal review. AR 23, 25. In so doing, he noted Plaintiff's 2015 and 2017 positive reports regarding her response to medications (*Id.* at 429, "she feels like she is doing pretty well," with methotrexate and Xeljanz) (Jan. 2017); *id.* at 434 (with methotrexate and Xeljanz she is "doing much better than when she did take the Humira") (Nov. 2015); *id.* at 435 ("overall condition on Humira has been greatly improved") (July 2015).

He gave a thorough review of Plaintiff's many activities of daily living, which included driving, simple meal preparation, pet care, laundry, light housework, shopping, personal hygiene, attending her son's church and band events, and handling money. *Id.* at 21, 24, 26. She reads, watches television, and engages with others, but she reported she cannot hold utensils to cook, and she cannot stand for a long time. *Id.* at 24. And the ALJ discounted Plaintiff's credibility. *Id.* at 27.

The ALJ noted Plaintiff's postoperative carpal tunnel release records that showed "good healing of the wound, full weight-bearing status, and acceptable range of motion." *Id.* at 25. He relied on objective examinations showing full motor power and no Tinel signs. He reviewed records of Plaintiff's MRIs and X-rays–the latter showing no "acute processes." *Id.* The medical record contained no medical source statements or treating physicians' opinions. *See id.* at 92. Finally, the ALJ relied on Drs. Yoakam's and

10

Boatman's opinions that Plaintiff's subjective complaints were only "partially consistent" with the objective medical evidence. *Id.* at 27. Substantial evidence supports the ALJ's RFC assessment.

### 3. The ALJ adequately developed the record.

Relatedly (and in the alternative), Plaintiff's third argument maintains the ALJ legally erred in failing to develop the record related to her bilateral upper extremity impairments. Doc. 14, at 24. She argues the medical evidence suggested at least a reasonable possibility she suffered from severe bilateral upper extremity impairments, or at the least that the ALJ needed more specific evidence to clarify her handling limitations. *Id.* at 25.

While an ALJ has the duty to develop the record, the Commissioner has broad latitude in deciding whether to order a consultative exam. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). Generally, an ALJ should order a consultative exam where there is a direct conflict in the medical evidence requiring resolution, where the medical evidence in the record is inconclusive, or where additional tests are required to explain a diagnosis already in the record. *Id.* (internal citations omitted); s*ee also* 20 C.F.R. § 404.1519a(b) (stating that the agency *may*—but need not—purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence is insufficient to allow the agency to make a determination on the claim). The Court finds Plaintiff does not point to any direct conflict in the

11

medical evidence requiring resolution, or to where the medical evidence in the record is inconclusive, or to where additional tests are required to explain a diagnosis already in the record. Plaintiff's counsel made no request for the ALJ to obtain any other existing medical records, for a consultative examination, or for any other development of the record. See AR 93-94 (ALJ inquiring "[a]re there any" consultative examinations and Plaintiff's counsel responding, "[n]o, sir."). The ALJ properly analyzed all of the medical evidence and did not fail in his duty to develop the record. Substantial evidence supports the ALJ's decision.

## III. Conclusion.

Based on the above, the court affirms the Commissioner's decision.

**ENTERED** this 11th day of February, 2020.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE